## Hartman's Estate (No. 1).

Argued October 4, 1935. Before FRAZER, C. J., KEP-
HART, SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Harry L. Siegel,* with him *R. C. Elder,* for appellants.

*Harold W. Houck,* for appellee.

OPINION BY MR. JUSTICE BARNES, January 6, 1936:

The appeals in this estate are from the final decree of the Orphans' Court of Mifflin County, dismissing exceptions of appellants to the auditor's supplemental report and revised schedule of distribution, and confirming absolutely the report and schedule.

The decedent, Rachel J. Hartman, died on July 29, 1932. She was an elderly woman who never married, and had resided during her entire lifetime at Milroy, Armagh Township, in Mifflin County. On August 31, 1932, following her death, there was probated a last will and testament of decedent, dated July 28, 1932, upon which letters testamentary were granted on September 3, 1932, to the executor named therein, C. G. Milliken. The executor filed his first and final account of the administration of the estate on March 27, 1933, showing a balance of $18,274.20 for distribution. Exceptions to the account were filed by Harry Haines, nephew, the only heir at law and next of kin of decedent. The court thereupon appointed an auditor to pass upon the exceptions and award distribution of the balance of the estate.

During the prolonged hearings which he held, the auditor received in evidence three testamentary instruments or writings of decedent, each one of which purported to be and was designated by testatrix as her last will and testament. The first of these was dated July 27, 1927, having attached a codicil of the date of February 19, 1931. We are not concerned here with this first will and codicil. It is conceded that its provisions were revoked and voided by the subsequent testamentary dispositions made by testatrix.

There remained two other instruments purporting to be wills of this testatrix: one dated July 29, 1931, hereinafter referred to as the "1931 will," and the other dated July 28, 1932, hereinafter called the "1932 will." The 1931 will was not offered for probate until August 12, 1933, approximately one year after letters testamentary had been granted to the executor upon the 1932 will. Although admitted to probate, no letters testamentary were issued under the 1931 will, the executor acting under the letters granted upon the 1932 will. Both wills named C. G. Milliken as executor.

From the record it appears that all of these instruments executed by the testatrix were prepared and witnessed by William P. Woods, a banker, and for many years the friend and adviser of the testatrix. In preparing these wills the scrivener used printed forms which he obtained from a legal stationer, each one of which contained a printed clause of revocation reading as follows: "hereby revoking and making void all former wills by me at any time heretofore made." There is no question involved in these appeals respecting the execution, witnessing and publication of each one of these instruments.

The death of the testatrix on July 29, 1932, within one day after the execution of the 1932 will, gave rise to the question before the auditor whether the bequests and devises in the 1932 will to the charitable and religious institutions named therein are voided, as falling within the "thirty-day provision" of section 6 of the Wills Act of June 7, 1917, P. L. 403, 20 P. S., section 195. This would affect the gifts to the White Memorial Congregational Church of Milroy, Pennsylvania, to the Lewistown Hospital, the appellants herein, and to the Congregational Conference of Pennsylvania. The objection to a gift in favor of the Woodlawn Cemetery Company of Milroy was withdrawn by written stipulation filed of record.

Referring to the provisions of the 1931 will, the testatrix in Item 1 devised certain farm lands to J. Charles Treaster, and gave the balance of her real estate to the Congregational Conference of Pennsylvania. In Item 2, the sum of $1,000 was bequeathed to the Lewistown Hospital. The 3d Item reads as follows: "I herewith order and direct my hereinafter named executor or executors to give the balance of my estate of whatsoever nature, as I have otherwise directed him or them." From the evidence before the auditor, the executor was entrusted under the oral directions referred to in this item, to make the following gifts: To the White Memorial Congregational Church of Milroy, Pennsylvania, $500; to Woodlawn Cemetery Company, $1,000; to various named persons gifts of cash and specific articles belonging to decedent; to the Congregational Conference of Pennsylvania, all the rest of the furniture; and to the White Memorial Congregational Church of Milroy, Pennsylvania, the balance of decedent's personal estate.

The 1932 will bequeathed directly to the White Memorial Congregational Church of Milroy, Pennsylvania, the sum of $500, and to the Woodlawn Cemetery Company the sum of $1,000 in trust to use the income for the care of the decedent's buiral lot; the devise of the real estate to Treaster and the Congregational Conference of Pennsylvania was identical with the 1931 will. The bequest to the Lewistown Hospital was increased to the sum of $2,000; a bequest of a like amount of $2,000 was made to the nephew of testatrix, Harry Haines. After the distribution of certain cash gifts and personal effects of furniture, according to directions privately given to the executor, the balance of the estate of whatsoever nature was given to the White Memorial Congregational Church of Milroy, Pennsylvania. Testatrix finally directed that the executors be not required to give bond or file an account in the settlement of the estate.

While it may be said that the two wills had provisions in common, nevertheless by comparison it is apparent

that the 1932 will shows important changes from the 1931 will in these particulars: (1) the bequest of $500 to the White Memorial Congregational Church was a direct bequest instead of by oral instructions; (2) there was a direct bequest of $1,000 to the Woodlawn Cemetery Company; (3) the bequest to the Lewistown Hospital was raised from $1,000 to $2,000; (4) there was included a bequest of $2,000 to Harry Haines; (5) there was a direct gift of the residuary estate to the White Memorial Congregational Church instead of by oral instructions to the executor; (6) there was a provision that the executor be relieved of giving bond or filing an account.

The appellants here earnestly contend, and the auditor in a carefully studied report reached the conclusion, that the 1932 will was intended as a codicil to the 1931 will, and not as an absolute revocation thereof. The auditor admitted testimony of the scrivener and the executor of the will, both of whom were witnesses present at the time of its execution, as to the declarations and instructions of the testatrix evincing her intention that the two instruments were to stand together. Basing his findings largely upon the testimony of these two witnesses, he decided that the 1932 will should be construed as a codicil to the 1931 will, and the gifts to the charities named related back to the 1931 will and were valid. Accordingly, in the schedule of distribution the auditor awarded to them the gifts provided by the testatrix. Exceptions to the report and award of the auditor in respect to these gifts were sustained by the court below upon the ground that the 1931 will was revoked by the later will, and the gifts to the charities and religious institutions as contained in the 1932 will were barred by the act above mentioned. The report was referred back to the auditor with directions to make distribution of the estate in accordance with the court's opinion. To the auditor's supplemental report and the revised schedule of distribution the charities filed exceptions which

were dismissed by the court below, this action being assigned as error in these appeals.

After a careful review of the record, we are of opinion that the court below properly decided the question of the revocation of the 1931 will. We are not in agreement with the conclusion reached by the auditor that the instrument of 1932 is in effect a codicil. On the contrary, we view that writing as a complete disposition of all the property of testatrix, inconsistent with the earlier will, and effectually revoking it not only by express words but by manifest intention. It would have been error had the court below failed to sustain the exceptions to the auditor's findings upon this question.

We have pointed out the differences between the two wills and the material changes which the testatrix made or caused to be made in the later will. A will, complete within its four corners, which makes a disposition of all the property of testatrix, as the 1932 will here does, is clearly incompatible with the existence of any former will and must operate as a revocation of all wills previously executed by testatrix: 1 Jarman on Wills, page 333. As stated in Teacle's Est., 153 Pa. 219, it "must operate as a revocation without express words to that effect." Our conclusion would have been the same even though the 1932 will contained no express clause of revocation, as we regard the two wills in question as antagonistic wills, where a presumption of revocation may be made from such circumstance: Sigel's Est. (No. 1), 213 Pa. 14, 17. However, we cannot read out of the later will the clause of revocation, and giving to it, therefore, its meaning and effect, it would seem in itself determinative of the question whether the earlier will was to stand.

We had before us a similar question in McClure's Est., 309 Pa. 370. In that case the later will contained no clause of revocation, yet it was held that the second will operated as a revocation of an earlier will even without express words to that effect. Mr. Justice KEPHART,

speaking for this court, said: "The later will, sustained
by the court below, disposes of the entire estate and is
inconsistent with the earlier will. The provisions of the
two wills cannot be harmonized. There is no reference
in the later will to the first will, nothing inherent in the
second will connects it with, or in any way refers to, or
leads the mind to, the earlier will. They are two sep-
arate and distinct papers, both complete in themselves,
without any relation to each other, with no inherent
characteristics to compel a connection. A will may
adopt an existing paper by reference thereto but to do so
it must so identify the instrument as not to admit of a
contrary conclusion." See also Teacle's Est., supra,
where the only question was whether a will of the tes-
tatrix dated September 11, 1888, containing a clause of
revocation, revoked a prior will dated August 12, 1881.
It was contended that both wills should be admitted to
probate and stand together as the will of testatrix. The
court below held that the will of 1881 had been revoked
and refused to admit it to probate. Mr. Chief Justice
PAXSON said, at page 223: "While many of the provisions
of the two wills are similar there are several points of
difference, and different executors are named in each
will. In case both wills are admitted to probate, as con-
stituting but one testamentary paper, to which set of
executors are the letters testamentary to be granted?
The second will makes a complete disposition of all the
property of the testatrix. Such a will is clearly incom-
patible with any former will, and, therefore, must oper-
ate as a revocation without express words to that effect.
. . . It is conceded that a will may be composed of dif-
ferent papers, executed at different times. There may be
codicils executed from time to time, changing the dis-
position of the testator's property, and there may be
other papers which operate as codicils for the same pur-
pose, but when a paper is executed with all the formali-
ties of a will, disposing of the testator's entire estate,
and appointing executors to execute it, it impliedly re-

vokes all former wills for the reason that it is the latest declaration of the testator's intention. And if a clause of revocation be added it expressly revokes former wills." See also Hoffner's Est., 161 Pa. 331; Price v. Maxwell, 28 Pa. 23.

The appellants, in support of their position, place reliance upon two cases: Sloan's App., 168 Pa. 422, and Bingaman's Est., 281 Pa. 497. But the facts in both cases are different from those with which we have here to deal. In Sloan's Appeal, the testator designated the later instrument which he signed as "a codicil" and made direct reference to his earlier will in these words: "And I desire my said Will *to stand confirmed* in all other respects." The will was made by the testator more than one calendar month before death, while the codicil was executed within the month. The codicil postponed the time of payment of the bequest to a charity as contained in the will until after the expiration of two life estates, without changing the purpose or terms in other respects. In sustaining the gift, we held that there was no revocation of it by the codicil and the Act of April 26, 1855, P. L. 328, did not apply. In the second case, Bingaman's Estate, the later instrument, although called a will, was in effect a codicil. It revoked all former wills "excepting only so much of the same as relate to the charitable gifts, bequests and devises, which are set forth and made in a former will made by me." We decided (page 507): "The present will is, in effect, a codicil, and in some respects cannot possibly be anything else. In terms it refers to the will of 1919, as expressing a part of decedent's testamentary intent when he executed this will of 1922, and, without the former will in some respects *it cannot be known* what testator intended when he executed the later one. . . . Hence the two wills were rightfully probated together and must be construed together in this particular." To the same effect are other cases cited by the appellants, viz.: Sigel's Est. (No. 1), supra; Warne's Est., 302 Pa. 386, and

Mifflin's Est., 49 Pa. Superior Ct. 605. That all these cases are to be distinguished from the present case is too clear to merit further discussion.*

The testimony of the two witnesses, Mr. Woods, the scrivener of the will, and Mr. Milliken, the executor, was incompetent to prove that it was not the intention or desire of the testatrix to revoke her 1931 will, but that her real and only purpose in making the 1932 will was to increase the bequest to the Lewistown Hospital and to provide a gift to her nephew and heir-at-law, Harry Haines. We think it was error for the auditor to receive parol testimony to remove the clause of revocation from the 1932 will. As the court below aptly said: "If this clause could be taken out of the will by extrinsic evidence, so could any other clause, and we have a testament, not in writing, but by oral declaration directly repugnant to section 2 of the Wills Act of June 7, 1917, P. L. 403, 20 P. S., section 191." It is true that parol evidence is admissible to explain a latent ambiguity in a will, such as an inaccuracy in the description of a property (see Brooklyn Trust Co. v. Warrington, 277 Pa. 204, and cases therein cited), but where the language of the will is perfectly clear, and there is a complete and plain will in writing, it cannot be altered or affected by parol evidence as to testamentary intention, nor by any evidence of matters dehors the will: Wallize v. Wallize, 55 Pa. 242; Willard's App., 68 Pa. 327. Moreover, we are not impressed with the argument that a constructive fraud was practiced upon the testatrix by the allegation that the clause of revocation was unknown to her, and was not read to her, but was permitted to remain in the will without her knowledge and consent. The testimony reveals that the testatrix was of sound mind and understood the testamentary disposition she was making of her estate. However incompetent the testimony of these two witnesses named above may be, it failed to support the allegations made in this

---

* Italics ours.

connection. Therefore, it was proper, in our opinion, for the court below to sustain the exceptions to the auditor's findings based upon such testimony, which action is here made the subject of several of the assignments of error.

From what has been said it is apparent that the gifts to the charitable and religious uses cannot be sustained. The 1932 will, which must stand alone as the will of this testatrix, was not made "at least thirty days" before her decease, and, therefore, the charitable bequests and devises therein contained are voided by the statute: Wills Act of June 7, 1917, P. L. 403, section 6.

Since the present act is a reënactment of section 11 of the Act of April 26, 1855, P. L. 328, as amended by the Act of June 7, 1911, P. L. 702, which changed the limitation of time from "one calendar month" to "thirty days," we have several times pointed out that the interpretation of the act by this court in the cases under the earlier act is applicable to cases arising under the Wills Act of 1917: Bingaman's Est., supra, at page 503. The construction of this statute over a period of years has been so well established that it has become a rule of property. We have uniformly held from the earliest interpretation of the statute to the present time that estates devised or bequeathed contrary to its provisions are void. The act establishes an unbending rule and fixes an arbitrary period within which such dispositions of property, whether by deed or by will, shall be absolutely barred. Such bequests, under the circumstances, fail because of the incapacity in the beneficiaries to take. The act must be literally read and construed, if effect is to be given to the legislative intent, and cannot be stretched to save a bequest clearly intended by the act to be void. Charitable or religious institutions claiming bequests or devises must bring themselves within it. As between them and the next of kin of a testator, there are no equities, and the rights of each are such only as are given by the statute: Arnold's Est., 249 Pa. 348, 356;

Price v. Maxwell, supra; Luffberry's App., 125 Pa. 513; Gray's Est., 147 Pa. 67; Gregg's Est., 213 Pa. 260, 264; Carson's Est., 241 Pa. 117; Hegarty's App., 75 Pa. 503, 516; Lynch v. Lynch, 132 Pa. 422; Kane's Est., 185 Pa. 544; Channon's Est., 266 Pa. 417; Kessler's Est., 221 Pa. 314; Moore v. Deyo, 212 Pa. 102; Paxson's Est., 221 Pa. 98, 111; Hoffner's Est., supra.

The act provides that the voided legacies shall in the first place go to the residuary legatee or devisee. In the present case the bequest of the residuary estate is void for the same reason as the other charitable bequests, and hence the fund cannot pass to the residuary legatee but must necessarily go "to the next of kin and heir-at-law."

We find no error in the decree entered in the court below disallowing the religious and charitable bequests mentioned, and directing distribution of the balance of the estate to the sole heir-at-law, Harry Haines. Accordingly, all assignments of error are overruled, and the decree is affirmed. Costs to be paid by estate of Rachel J. Hartman, deceased.