Gray Will.

Argued May 24, 1950. Before DREW, C. J., STERN, STEARNE, JONES and BELL, JJ.

J. B. F. Rinehart, Jr., with him Waychoff, Maxwell & Waychoff, for appellant.

W. C. Montgomery, with him Montgomery, Thompson & Baily and Scott & Hook, for appellee.

OPINION BY MR. JUSTICE BELL, September 26, 1950:

Sarah Gray died March 18, 1948, at the age of 93, leaving a will dated September 21, 1945. She left to survive her, two sons and two daughters; three grandchildren (who are children of a deceased son); four grandchildren (children of another deceased son); and four great-grandchildren (who are children of a deceased son of one of decedent's deceased children).

In her will dated September 21, 1945, decedent left small pecuniary bequests to all of her descendants, *her house and lot to her daughter, Lucy,* and the *residue of her estate to her three children, Rachel, Donley and Lucy, in equal shares.* Her son, Ross Gray, appealed from the probate of the will alleging (1) a later will dated January 22, 1946; (2) lack of testamentary capacity; and (3) undue influence.

The learned trial judge, President Judge MATTHEWS, in a very able and exhaustive opinion, discussed contestant's evidence and his contentions of lack of testamentary capacity and of undue influence as well as all the incidental but important questions that arose in this case; and held (1) that the writing dated January 22, 1946 was not a valid will; (2) that testatrix had

testamentary capacity; (3) that there was no undue influence; and (4) that there was no substantial dispute sufficient to entitle the contestant to an issue on the ground of testamentary capacity or of undue influence. For reasons unknown to us, Judge MATTHEWS did not decide or discuss whether said writing of 1946 revoked testatrix's will dated September 21, 1945.

Ross Gray appealed from the court's decree, but probably because of the lower court's convincing opinion, limited this appeal to questions arising out of the writing of January 22, 1946. Gray contends (1) that said writing, which was signed by a mark and witnessed by two persons, only one of whom, however, signed her name as a witness thereto, was a "will or other writing" within the meaning of Section 5 of the Wills Act of April 24, 1947, P.L. 89; 20 PS §180.5, and (2) that said writing and other testimony evidenced an intention upon the part of the testatrix to revoke her will of September 21, 1945, and therefore an intestacy resulted.

The subject of revocation and revival of wills has bothered and perplexed courts throughout America for over a century (See *Burtt Will*, 353 Pa. 217, 44 A. 2d 670; *Ford's Estate*, 301 Pa. 183, 151 A. 789; *McClure's Estate*, 309 Pa. 370, 165 A. 24). Fortunately, the Wills Act of 1947 has, as we shall see, eliminated some of these problems.

The "will or other writing" of January 22, 1946, and the surrounding circumstances are as follows: Testatrix frequently discussed with a neighbor, Mrs. Fannie Graff, changing her will so as to leave her estate to her children equally. Mrs. Graff, on January 22, 1946, told Mrs. Gray that she would write *a letter* for her and give it to her lawyer (although the only person she knew to give it to was Mr. Powell at the bank) if Mrs. Gray would sign it. ". . . I wouldn't mind telling him

that she wanted these changes, and maybe he could make them, and bring the papers up there for her to sign, but I never saw him, . . .". Mrs. Gray then told Mrs. Graff what to write and she wrote it that day. She then told Mrs. Gray she would give it to Mrs. Gray's lawyer if she could find out who had written Mrs. Gray's will; but she never found out and she kept the writing. This written instrument is as follows:

"January 22, 1946, The house and lot where I live to go to my children, Lucy Myers, Anna Tustin, Ross Gray, Donley Gray. The $500.00 I paid for Ross Gray is not to be counted out of his share of my estate. My government bonds are to be divided equal between my children, Ross Gray, Donley Gray, Lucy Myers and Anna Tustin. (Signed) Mrs. Ella X (her mark) Gray. Witness: Fannie Graff".

Mrs. Graff testified on direct examination, "I did *not* think of it as a will". Mrs. Graff further testified on cross-examination, "And you say this was intended as a letter? A. Yes, it was intended as a letter". In other words, Mrs. Gray did not intend this as a will but as a letter of instruction to her attorney for the preparation of a new will; and the letter or writing was retained by Mrs. Graff and never delivered to the bank or to an attorney to enable him to prepare a new will.

Mrs. Anderson was present and saw Mrs. Gray make her mark *but did not sign her name on the paper as a subscribing witness.* Mrs. Anderson corroborated Mrs. Graff as to the preparation of this writing under Mrs. Gray's direction, but made no statement concerning the purpose of the writing as testified by Mrs. Graff.

The first question that arises is, was this writing of January 22, 1946, a will and if so, was it probatable as such? The learned trial judge found and we agree that this writing was testamentary in character: *Davis's Estate,* 275 Pa. 126, 118 A. 645; *Kimmel's Estate,* 276 Pa.

435, 123 A. 405; *Wenz's Estate,* 345 Pa. 393, 29 A. 2d 13. It is however equally clear that even if it be a will, it is not a valid or probatable will. Section 2, sub-section 2 of the Wills Act of April 24, 1947, P.L. 89 provides: "If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, He makes his mark in the presence of *two witnesses who sign their names to the will in his presence*".* This Act changed the prior law which, under Section 3 of the Wills Act of June 7, 1917, P.L. 403 required a will signed by a mark to "be proved by the oaths or affirmations of two or more competent witnesses", but did *not* require the witnesses to be *subscribing* witnesses.

The Wills Act of April 24, 1947 provides in Section 22 that the Act "shall take effect on the first day of January, one thousand nine hundred forty-eight, and shall apply only to the wills of all persons dying on or after that date". It is clear, therefore, that the testamentary writing of January 22, 1946 is not a valid will and cannot be probated as a will since the testatrix died March 18, 1948: *Spain's Estate,* 327 Pa. 226, 193 A. 262.

The question, however, remains, did the aforesaid writing of January 22, 1946 revoke testatrix's will of September 21, 1945, and if so, did an intestacy result, or was the will revived because the writing of 1946 could not be probated as a valid will? The writing of 1946 was inconsistent with and disposed of Mrs. Gray's estate in an entirely different manner than the earlier will of 1945 but contained no clause of revocation. Section 5 of the Wills Act of April 24, 1947 provides: "No will or codicil in writing, or any part thereof, can be

---

* Italics throughout, ours.

revoked or altered otherwise than: (1) . . . By some other will or codicil in writing, (2) . . . *By some other writing declaring the same, executed and proved in the manner required of wills,* or (3) . . . By being burnt, torn, canceled, obliterated, or destroyed, with the intent and for the purpose of revocation, by the testator himself . . . ."

In order to revoke Mrs. Gray's will, it is clear from the aforesaid statutory requirement, that there must be (a) some other writing; (b) it must declare the (earlier) will of 1945 revoked; and (c) the writing must be executed and proved in the manner required of a will signed by a mark.

The "other writing" does not have to be a valid or probatable will: *Burtt Will,* 353 Pa. 217, 44 A. 2d 670; *Ford's Estate,* 301 Pa. 183, 151 A. 789. Moreover, the statute does not limit revocation to revocation by a will, valid or otherwise; a revocation may also be by "some other writing", and, while the authorities are in disagreement, the more recent authorities hold that this other writing may be an ineffective will: *Burtt Will,* 353 Pa. 217, 44 A. 2d 670; *Ford's Estate,* 301 Pa. 183, 151 A. 789; *Shetter's Estate,* 303 Pa. 193, 154 A. 288; *McKenna v. McMichael,* 189 Pa. 440, 42 A. 14.

Furthermore, the declaration of revocation need not be express, it may, under the authorities, be by necessary implication. An earlier will can be revoked by a later will or other writing which expressly revokes it, or which disposes of an estate in an entirely different manner than the earlier will and is inconsistent therewith. There is no difference in principle between a revocation by an express clause or by inconsistent provisions: *Burtt Will,* 353 Pa. 217, 44 A. 2d 670; *McClure's Estate,* 309 Pa. 370, 165 A. 24; *Teacle's Estate,* 153 Pa. 219, 25 A. 1135; *Hartman's Estate, No. 1,* 320 Pa. 321, 182 A. 234; 1 Jarman on Wills, page 333.

Whether the instrument of January 22, 1946 is "some other writing" within the language, meaning and intent of Section 5 of the Wills Act of 1947 is a very close and difficult question. Testatrix did not know or remember who wrote her will but directed the scrivener to give to Mr. Powell at the bank this letter. The scrivener also testified that said writing was never intended as a will but merely as a letter (of instruction to testatrix's attorney to draw a new will for her). It was never delivered to Mr. Powell or to an attorney and, if it had been delivered and the attorney had redrawn Mrs. Gray's will pursuant to the instruction in her said letter, *non constat* that she would have signed it. To put it another way, the contestant failed to prove that this was a completed testamentary disposition by Mrs. Gray of her property or a final expression of her intention. We, therefore, do not have a writing in which testatrix intended to declare a revocation (by necessary implication) of her will of 1945.

Equally important, this "other writing" must be executed and proved in accordance with the statute: *Shetter's Estate,* 303 Pa. 193, 154 A. 288; *Burtt Will,* 353 Pa. 217, 229, 233, 44 A. 2d 670; *McKenna v. McMichael,* 189 Pa. 440, 42 A. 14; *Harrison's Estate,* 316 Pa. 15, 173 A. 407; and in this case that is impossible since the writing of 1946, having only one subscribing witness, was not executed and could not be proved in the manner required of a will signed by a mark.

Since we have decided that there was no revocation by the writing of January 22, 1946, it is unnecessary to discuss the question of a possible revival of the will of September 21, 1945 under Section 6 of the Wills Act of 1947.

Decree affirmed at the cost of the appellant.