## Kehr Will.

474

Argued November 19, 1952. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

reargument refused April 15, 1953.

*J. Webster Jones*, with him *Craig Huston*, for appellant.

*Austin Miller Lee*, with him *Joseph W. Henderson*, *George M. Brodhead* and *Henry L. Schimpf, Jr.*, for appellees.

OPINION BY MR. JUSTICE BELL, March 23, 1953:

Testatrix's daughter appeals from a decree of the Orphans' Court which sustained an order of the Register of Wills, which admitted decedent's will to probate

and held an alleged revocation to be inapplicable and nugatory. The crucial question is: Was the testatrix's will, dated August 7, 1942, revoked by the writing of the words "Null and Void" on a carbon copy of the will, together with the attendant and extrinsic circumstances?

Mrs. Kehr left her original will for safe-keeping with her attorney, Rowland C. Evans, Sr., and received from him and took home with her an exact carbon copy. The will gave testatrix's estate principally to charities and contained no provision for the petitioner, who is testatrix's only child.

Mrs. Kehr died on July 2, 1951, and Rowland C. Evans, Jr. probated her will of August 7, 1942, and qualified as executor. An exact carbon copy of the original will was found after Mrs. Kehr's death in a bureau drawer in her bedroom. At the top of the first page of this unexecuted copy, in the blank space above the typewritten words of the will, she had written in ink the words "Null and Void" and under these words "S. H. K." It was duly proved and the Court below found that the words "Null and Void" and the initials were all in decedent's handwriting.

Did this show a revocatory intent and if so, what did the testatrix attempt to revoke? To answer these questions we must place ourselves in the armchair of the testatrix at the time of the alleged revocation and consider all the facts and circumstances surrounding her: *Jackson's Estate*, 337 Pa. 561, 12 A. 2d 338; *Britt Estate*, 369 Pa. 450, 87 A. 2d 243.

In *Jackson's Estate*, 337 Pa., supra, this Court said (pp. 565, 566): ". . . in interpreting wills [or alleged revocatory writings] which do not unmistakably reveal the maker's intention . . . 'You may place yourself . . . in the testator's arm-chair and consider the circum-

stances by which he was surrounded . . . to assist you in arriving at his intention.' See Jarman on Wills, 7th ed., 749."

Mr. Evans testified that Mrs. Kehr did not have her original will because he had refused to deliver it to her until she paid him a fee for drawing it. This evidence was, under the aforesaid authorities, clearly admissible since it was one of the important facts and circumstances surrounding testatrix when she wrote the words "Null and Void" on the copy of her will.

Mr. Evans also testified that Mrs. Kehr wrote him two letters in the summer of 1946 (which he could not find) in which she stated that her will was null and void and had been cancelled; and that she intended to make a new will which would be prepared by Mr. Hermes. The testimony concerning testatrix's intention to make a new will was corroborated by the finding of the Auditing Judge: "Other pencilled memoranda, in the handwriting of testatrix, appeared among her personal effects. These memoranda indicate that she was preparing data incident to the drawing of a new will. However, no such will was discovered."

Whenever an instrument is ambiguous or the intention to will or to revoke is uncertain, acts, declarations and relevant circumstances are admissible to clarify or explain the ambiguity or to prove testator's intention. This evidence of decedent's acts and declarations and the relevant circumstances are therefore admissible under the facts in this case (1) as (corroborative) evidence of her intent to revoke when she used the words "Null and Void"; and (2) as an explanation of what the words "Null and Void" on the carbon copy referred to, i.e., her original will. Cf. *Ford's Estate*, 301 Pa. 183, 195, 151 A. 789; *Wenz's Estate*, 345 Pa. 393, 29 A. 2d 13; *Koehler's Estate*, 316 Pa. 321, 323, 175 A. 424; *Commonwealth v. Edwards*, 318 Pa. 1, 178 A. 20;

*Commonwealth v. Truitt,* 369 Pa. 72, 85 A. 2d 425; *Jackson's Estate,* 337 Pa., supra.

"Statements tending to show intent are admissible in evidence although self-serving": *Smith v. Smith,* 364 Pa. 1, 9, 70 A. 2d 630. Speaking of this type of evidence, Professor Wigmore in his treatise on Evidence (3rd Ed., Vol. 6, §1737) says: "But since the question is here merely one of the existence of a state of mind, may we not infer the testator's then state of mind from his *state of mind* at a *prior or subsequent time* not too remote? . . . hence, as evidence of this prior or subsequent state of mind, utterances at the prior or subsequent time are admissible." Just as the animus testandi is an indispensable ingredient of a will, so the animus revocandi is an indispensable ingredient of a revoking instrument: Cf. *Wenz's Estate,* 345 Pa., supra.

Were all these facts and circumstances considered together sufficient to prove a revocation of the will of August 7, 1942?

The Wills Act of 1947 (April 24, 1947, P. L. 89, 20 PS 180.1 et seq.) provides: "Section 5. Revocation of a Will.—No will or codicil in writing, or any part thereof, can be revoked or altered otherwise than: (1) Will or Codicil. By some other will or codicil in writing, (2) Other Writing. By some other writing declaring the same, executed and proved* in the manner required of wills, . . .".

Several questions immediately arise: (a) Was this unexecuted copy of her will "some other writing"; (b) did the words used amount to a declaration of revocation; (c) were the initials a sufficient signature or execution; (d) was the revocation signed at the end of the revoking instrument; and if all these questions

---

* It is conceded that it was proved in the manner required of wills.

are answered in the affirmative, (e) what do the words "Null and Void" refer and apply to?

These are close questions but they are made closer and more difficult by the following additional facts: On the first page of this carbon copy are several spelling corrections, namely, the "z" in Suzanna is stricken and above it is inserted an "s" in ink; in the fourth paragraph, the "Y" in Yarlborrough is stricken and inserted above it is the letter "M" and to the right thereof appears an "M" and the initials "S. H. K.", all in pencil. A penciled "X" has been drawn through the third, fifth and tenth paragraphs.* At the bottom of this page there is inserted in penciled handwriting, apparently not that of decedent, "7th Aug." in the blank space in the typing, where the date of the will is normally inserted. The same date appears in the original will.**

The words "some other writing" are plain and mean just what they say. No particular form or specific kind of language, instrument or writing are required; "it can be any sort of writing"; even an ineffective will has been held to be "some other writing" and hence a sufficient compliance with the Act: *Harrison's Estate*, 316 Pa. 15, 173 A. 407; *Gray Will*, 365 Pa. 411, 76 A. 2d 169; *Burtt Will*, 353 Pa. 217, 44 A. 2d 670.

The words "Null and Void" are clear; and undoubtedly amount to a declaration of revocation. ". . . the declaration of revocation need not be express,

---

* The paragraphs through which "X" is drawn contained a legacy of $1000 to George Hoover Streeker; a legacy of $500 to the Union Home; and a gift of the residuary estate to St. Alban's Chapter, Order of the Eastern Star.

** This presents no difficulty since the month and day of the year are often filled in in a will by the attorney, or stenographer, or by a witness, instead of by the testatrix.

it may . . . be by necessary implication": *Gray Will,* 365 Pa., supra.

Was the revoking instrument executed in the manner required of wills, i.e., "Every will . . . shall be signed by the testator at the end thereof . . ."? This clearly means that the revoking instrument must be signed by testator at the end of the revocation just as a will must be signed at the end of a will. "The end contemplated by the statute is the logical end of the language used by decedent in expressing his testamentary [here, his revocatory] purpose": *Coyne Will,* 349 Pa. 331, 333, 37 A. 2d 509. There is no doubt in our minds that the revoking instrument was signed at the end thereof.

The Court below further found, and we agree, that the signature by the initials is sufficient in this case to constitute the signature and execution required by the Wills Act.

In *Knox's Estate,* 131 Pa. 220, 18 A. 1021, this Court said, (p. 231) : "What, therefore, shall constitute a sufficient signature must depend largely on the custom of the time and place, the habit of the individual, and the circumstances of each particular case. As already seen, the English and some American cases hold that a signature by initials only, or otherwise informal and short of full name, may be a valid execution of a will or a contract, if the intent to execute is apparent".

We are therefore convinced that the requirements of the Wills Act providing for revocation of a will "by some other writing declaring the same, executed and proved in the manner required of wills" have been sufficiently complied with if the revocation is applicable to testatrix's will of August 7, 1942.

If the words "Null and Void", followed by the signature of testatrix, had appeared at the same place on the original will as they did on the carbon copy, it

would be sufficient to constitute a revocation or cancellation of the entire will. Do these words, appearing on the carbon copy, apply to Mrs. Kehr's original will? The facts and circumstances in this case are obviously very unusual. Mrs. Kehr could not obtain from her attorney her original will so that she might revoke or cancel or destroy it. She therefore did a natural and plausible thing for any laywoman to do under the circumstances— she wrote "Null and Void" on the carbon copy, thereby intending and declaring her will to be null and void. It must be recalled that she had only one will, viz., that of August 7, 1942; and when she wrote the words "Null and Void" on the exact copy of her original will it could refer to no other instrument than her original will. It would have been useless to write the words "Null and Void" on the copy if all Mrs. Kehr was referring to and declaring null and void was the copy, since the copy was unexecuted and had no validity or life. It would therefore be unreasonable to construe the revocation as applying to the carbon copy as distinguished from the original will, since the carbon copy, we repeat, never had any validity or life. This interpretation of the testatrix's intent is corroborated and confirmed by the facts in the case, viz., (1) she could not obtain her original will to revoke or cancel it; and (2) she wrote her attorney stating (a) that her will was null and void and had been cancelled and (b) that she intended to make a new will; and (c) memoranda of a new will were found in her handwriting among her personal effects.

We believe that the testatrix intended to, and under the exceptional facts in this case, succeeded in revoking her original will of August 7, 1942, by some other writing declared the same revoked or cancelled, which was duly signed by her at the end thereof and proved in the manner required by the Wills Act.

Decree reversed; costs to be paid out of the Estate.

———

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

I am unable to join in the majority opinion. The single question involved is whether or not a notation on an unexecuted, altered, carbon copy of a probated will constitutes a revocation of the will under the provisions of the statute. The majority hold that it does. I am of the contrary view.

At the inception it is to be borne in mind that the privilege of disposing of an estate by will or through inheritance is not a natural or a constitutional right but exists solely by grace of the sovereign: *Strode v. Commonwealth*, 52 Pa. 181; *Maginn's Estate*, 278 Pa. 89, 98, 122 A. 264; *U. S. v. Perkins*, 163 U. S. 625, 16 S. Ct. 1073. It is the sovereign which prescribes *by statute* the manner in which such disposition shall be accomplished. Even though testator's intent to make a certain testamentary disposition clearly appears, such intent is totally ineffective unless embodied in a will made and executed in accordance with the terms of the statute: *Maginn's Estate*, 278 Pa. 89, 91, 122 A. 264; *Baldwin Will*, 357 Pa. 432, 440, 55 A. 2d 263. As Justice (later Chief Justice) KEPHART said in *Maginn's Estate, supra,* p. 91: "It is possible, in some cases, a 'decedent may have thought he had made a will, but the statute says he had not. The question is not one of his thought in that respect, but what he actually did, or . . . failed to do . . . . "It may happen [that] . . . wills truly expressing the intentions of the testators are made without observations of the required forms; whenever that happens, while the genuine intention is frustrated . . . the legislature . . . has thought it best,

and has therefore determined, to run the risk of frustrating that intention . . . , in preference to the risk of giving effect to or facilitating the formation of spurious wills, by the absence of forms. . . The evil of defeating the intention . . . is less than the evil probably to arise by giving validity to wills made without any form. . ." ', or in derogation of testator's wishes, fraudulently imposing spurious wills on his estate: Churchill's Est., 260 Pa. 94, 101." For other examples of situations in which the expressed intent of a decedent is frustrated because it runs contrary to a positive rule of law see: *Lockhart's Estate,* 306 Pa. 394, 401, 159 A. 874; *Hartman's Estate (No. 1),* 320 Pa. 321, 330, 182 A. 234. For this reason it has long been the rule that the intention of the testator may not be determined from parol testimony. Such intention must be ascertained from the *words* of the testamentary writing, *executed in compliance with the statute*: *Iddings v. Iddings,* 7 S. & R. 111; *Willard's Estate,* 68 Pa. 327. Justice KEPHART expressed it thus in *Reinheimer's Estate,* 265 Pa. 185, 189, 108 A. 412: "The intention of the testator must be found from what appears upon the face of the will, and, while extrinsic evidence may be admitted to aid or explain, it must always relate to *that which is embodied in the will.* It cannot have the effect of remodeling the will. The controlling principle regarding the admission of such testimony is that it cannot be received as evidence of testator's intention outside of and independent of the written words employed. The court must find its meaning, if there is one, and not, under guise of a construction or under general powers of equity, to assume to correct or redraft the will, in which the testator has expressed his intentions." (Emphasis supplied)

*. . This philosophy applies equally to revocation.* Valid wills may only be set aside in the manner prescribed

by statute. In the early case of *Clingan v. Mitcheltree,* 31 Pa. 25, we said (p. 36) : ". . . that the statute should have a strict construction, is clearly established by our own cases of Dunlop v. Dunlop, 10 Watts 153, Cavett's Appeal, 8 W. & S. 26, Greenough v. Greenough, 1 Jones 496, and Lewis v. Lewis, 2 W. & S. 455. . . . There is certainly great safety in adhering to the words of the statute; besides which, is there not a want of power to interpolate other words, or to find equivalents for the express direction of the statute? At all events, there is danger in establishing exceptions to a statutory rule, which, like the present, has been found to be essentially necessary, for the safe enjoyment and secure transmission of real estate, by the experience of ages; for if exceptions once begin, no one can say when, and where, they will end." And in *Williams' Estate,* 336 Pa. 235, 9 A. 2d 377, Justice (later Chief Justice) SCHAFFER said for the Court (p. 237) : "Under similar provisions in earlier acts it was held that unsigned writings, on the margins, back or other parts of the paper on which the will was written, even though written after the will was executed and expressing an intention that the will be revoked, were not effective, and that the will should be probated and the subsequent writings disregarded: [citing cases]."

This rule is one of general application. *In re Aker's Will,* 74 App. Div. 461, 77 N.Y.S. 643, aff'd 173 N.Y. 620, 66 N.E. 1103, involved an attempt to revoke by a signed writing on the margin of the original will. The court held it ineffective because not witnessed as required by statute saying (p. 647) : "Where a will is sought to be revoked solely by writing, it must conform in that respect to the requirement of the statute; and, failing in that, it does not revoke the will, even though there may be a clear intention so to do. In the present case the testator attempted to revoke his

will by written words. His act was clearly not in compliance with the statutory requirements, and therefore it failed of effect." See also: 1 Page on Wills, (3d ed.) Sec. 457 et seq.

As stated in the majority opinion, Susanna Hoover Kehr executed a will dated August 7, 1942, which had been prepared by her attorney. She left the original will with him for safekeeping and retained for her own purposes the unexecuted carbon copy. By the terms of her will testatrix gave the larger portion of her estate to charities. She made no provision for her daughter.

Testatrix died on July 2, 1951. Shortly thereafter her will dated August 7, 1942, was duly admitted to probate and letters testamentary were granted to the executor named therein.

Subsequently, the unexecuted carbon copy of the will which the decedent had retained was produced by her daughter. At the top of the first page, above the typing and written by testatrix in ink, appears the notation "Null and void" and immediately under these words, the letters "S. H. K." (her initials). Paragraphs three, five, and ten of the carbon copy are crossed out, and on page one of the carbon copy are two corrections in her handwriting. Contending that the will was revoked by the notation which appears on the unexecuted carbon copy, decedent's daughter took an appeal from probate.

The single question involved, as above stated, is whether or not this notation appearing on the unexecuted carbon copy of decedent's will is *another writing* sufficient in and of itself to revoke the will which is otherwise valid.

Section 5 of the Wills Act of 1947 (April 24, 1947, P. L. 89; 20 PS 180.5) prescribes three methods by which a will or codicil in writing may be revoked; viz.,

(1) by some other will or codicil in writing; (2) by some other writing declaring the same, executed and proved in the manner required of wills; and (3) by an act to the document, i.e., by being burnt, torn, canceled, obliterated, or destroyed with the intent and for the purpose of revocation.

In considering whether an attempted revocation meets the requirements of the Wills Act, supra, a sharp distinction must be drawn between the three statutory permissible methods of revocation. (1) Revocation may be by terms of another *will*. (2) To effect revocation by *"some other writing,"* the words of that writing must expressly declare that the will is revoked. (3) *Cancellation* is accomplished by an *"act to the document [will]" itself*.

I have carefully considered the legal effect of the notation which was found on the unexecuted carbon copy which the majority term a "declaration of revocation." The writing consists merely of three words: "null and void"—two adjectives and a conjunction. It omits any verb. If these words, and nothing more, had been written on a *blank piece of paper* no one could seriously contend that parol evidence should be received to establish that decedent had thereby intended to say, "I hereby declare that my last will and testament is null and void." This would be clearly equivalent to revocation *by parol*. Every legal authority would unhesitatingly condemn it, and there could be no justification for introducing such evidence *under the guise of explaining an ambiguity*. There would be no *words* to interpret. The document would fail to operate as a revocation irrespective of decedent's true intention to the contrary.

I freely concede that if the same words had been written on the *face of a valid will*, such will would be effectively revoked. This would be no *declaration* of

revocation nor would the words be ambiguous. It would clearly constitute a *cancellation*. Such notation would fall in the third category of revocations prescribed by the statute. Such cancellation unquestionably would terminate the legal efficacy of the instrument on which it was written.

With the above stated hypothetical cases in mind, considering only the question whether or not the notation involved *in this case* meets the statutory standard (*without regard for any expressions of revocatory intent outside of the writing itself*), the character of the notation is readily apparent. In and of itself it declares nothing, and therefore cannot be "some other writing *declaring* [revocation]." *It is an act of cancellation.* It cancels the document on which it was written. If this unexecuted document never possessed legal efficacy, I agree that testatrix accomplished nothing by her notation, and therefore did a useless thing. But irrespective of testatrix's real intention this does not justify the admission of *parol testimony* to prove that she meant to cancel her original will, *any more than it would be proper to show that the writer of an unsigned will really meant it to be his will but neglected to execute it.*

The majority have quoted from *Gray Will*, 365 Pa. 411, 76 A. 2d 169, as follows: ". . . the declaration of revocation need not be express, it may . . . be by necessary implication." They have omitted the succeeding explanation of that remark in *Gray Will*: "An earlier will can be revoked by a later will or other writing which expressly revokes it, or *which disposes of an estate in an entirely different manner than the earlier will and is inconsistent therewith.* There is no difference in principle between a revocation by an express clause or by inconsistent provisions: [citing cases]." (Emphasis supplied.) Revocation by inconsistent provi-

sions has long been sanctioned, but no other instance of revocation by implication has ever been upheld. There is a tremendous difference in principle between implying revocation from *inconsistency* and implying revocation of an original will *because of cancellation of an unexecuted and altered carbon copy.* Furthermore, this discussion in *Gray Will,* supra, was clearly dictum, since we only decided that the alleged revocation by a later will had not been properly executed and therefore we had no occasion to consider the sufficency of the language employed.

The majority cite *Ford's Estate,* 301 Pa. 183, 151 A. 789, and *Burtt Will,* 353 Pa. 217, 44 A. 2d 670, where parol testimony was admitted. But in both of these cases the controlling issue was *revival* (not revocation) of wills. In the *Ford Estate* the will containing an express clause of revocation was revoked by tearing or destroying the signature of decedent. Testimony was offered to prove the fact that cancellation was done at testator's direction and also to prove testator's intention to *revive* the earlier will. In *Burtt Will* the revocation was accomplished, as in *Gray Will,* supra, by *inconsistent provisions* in a later will. In both cases *revocation was conceded* and the question of *revival* was the sole issue. In the present case the question at issue is one of *revocation* only; viz., Was a revocation established under the permissive terms of the statute?

The majority obviously fail to distinguish cases involving *words* which have an equivocal meaning and those cases where the intention of testator cannot be determined because he has *omitted* language to express his thoughts. The alleged revocatory notation made no reference whatsoever to the original will. Nor is there any attempt *to incorporate it by reference.* If language *is* ambiguous, extrinsic evidence may be ad-

mitted to explain the ambiguity, but it must always relate *to that which is embodied in the writing.* The controlling principle regarding the admission of such testimony is that it cannot be received as evidence of testator's intention *outside and independent of the written words employed*: *Reinheimer's Estate,* 265 Pa. 185, 108 A. 412.

Extrinsic evidence may not supply language which testator has omitted. If the testator's intention cannot be ascertained because of the omission of language, the alleged revocatory writing must fail of its purpose. The inquiry is confined to the meaning of what the testator has said, and does not extend to the consideration of what he *might* have said but did not: *Nebinger's Estate,* 185 Pa. 399, 39 A. 1049; *Conner's Estate,* 346 Pa. 271, 29 A. 2d 514. Interpretation is never permitted to assume the proportions of reformation: *De-Silver's Estate,* 142 Pa. 74, 21 A. 882; *Jacob's Estate,* 343 Pa. 387, 22 A. 2d 744. It is true in construing *ambiguous* language of a will we must put ourselves in testator's "arm chair" in order to determine his intention but we are still required to declare the meaning of the *language used,* and not some other possible but undisclosed purpose: *Yate's Estate,* 281 Pa. 178, 126 A. 254. If intent cannot be gathered from the writing itself, words cannot be supplied to disclose it: *McKeehan v. Wilson,* 53 Pa. 74; *Rouse Estate,* 369 Pa. 568, 573, 87 A. 2d 281. The only words which Susanna Kehr used were "null and void." The majority are obviously supplying words for testatrix when they determine *from extrinsic evidence* that she meant to say but did not: "I hereby declare that my last will and testament of which this is a copy is null and void."

For these reasons I dissent. I would affirm the decree of the learned court below.