Estate of William Zentmayer, Deceased, The First Pennsylvania Banking and Trust Company, Executor v. Commissioner.
Estate of Zentmayer v. Commissioner
Docket No. 94756.
United States Tax Court
T.C. Memo 1963-197; 1963 Tax Ct. Memo LEXIS 147; 22 T.C.M. (CCH) 966; T.C.M. (RIA) 63197; July 26, 1963
*147 A decedent left his residuary estate in trust with the income payable to his sister for her life. He stated in his will that it was his "desire and intent" that the principal should be available for her "support, maintenance, welfare and comfort." He also provided that in order to carry out this intent the trustees might invade the principal "for the purpose of the support, the maintenance, the welfare and comfort of my said sister, and for any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my said sister." The remainder interest in the principal is to go to charities which qualify under section 2055(a)(2) of the 1954 Code for the charitable deduction. Held: The purposes for which the principal may be invaded are not limited by any ascertainable standard. Consequently, the charitable deduction cannot be valued and is not allowable under section 2055 of the Internal Revenue Code of 1954. Ernest L. Nagy, for the petitioner. Frederick A. Levy, for the respondent. HOYT
Memorandum Findings of Fact and Opinion HOYT, Judge: The respondent determined a $123,341.71 deficiency in the estate tax for the Estate of William Zentmayer. The Commissioner disallowed a charitable deduction for the bequest of a remainder interest in the principal of the testamentary trust on the grounds that since there was no ascertainable standard which limited the trustees' invasion of principal, the value of the charitable bequest was not determinable. The only issue for decision here is whether an ascertainable standard is provided by the decedent's will which sufficiently limits the invasion of the trust corpus. Findings of Fact Some of the facts have been stipulated and are so found. The decedent, William Zentmayer, died at the age of 93 on March 18, 1958, domiciled *149 in Montgomery County, Pennsylvania. The petitioner, a corporation incorporated under the laws of the Commonwealth of Pennsylvania, with its principal office in Philadelphia, Pennsylvania, is the executor of the estate, letters testamentary having been issued to it on March 31, 1958. The estate tax return was filed on June 17, 1959, with the district director of internal revenue at Philadelphia, Pennsylvania. William Zentmayer was unmarried and owned a house in Merion, Pennsylvania, where he had lived with his sister, Mary Zentmayer, for 26 years prior to his death. It was William's expectation that his sister would continue to live there should he predecease her. The house was relatively modest and had a value on the date of William's death of $26,000. William was a well known ophthalmologist and also taught at the Graduate School of Medicine at the University of Pennsylvania. He did some traveling in connection with his profession including several medical conventions in Europe. Mary, however, preferred to stay at home and did little or no traveling. William and his sister were not very active socially except for frequent visits to concerts, operas, and the theater and they even *150 stopped going to such events about 10 years before William's death. In general they led a quiet, reserved and modest life. William left a will and codicil in which he appointed the petitioner and William H. Sidebottom as trustees of a testamentary trust for the major part of his estate. On the date of death this portion of his estate had a fair market value of $477,999.46. The fourth article of the will provides that the trustees should pay the net trust income for "the support, maintenance, welfare and comfort" of his sister, Mary, during her life. The remainder interest in the principal (except for the sum of $6,000), together with any accrued or uncollected income was left to certain charitable organizations. It is stipulated that these organizations were organized and operated exclusively for charitable and scientific, literary, or educational purposes within the meaning of section 2055(a)(2) of the Internal Revenue Code of 1954. It was provided by the will that trust principal may be invaded for the benefit of Mary as follows: FIFTH: It is my desire and my intent that any and all parts of my estate, as well principal as income, shall be available *151 for the support, maintenance, welfare and comfort of my said sister, so that such principal and income may be applied thereto if occasion arises as herein set forth. In order that my said desire and intent may be carried out, I specially order and direct that for the purpose of the support, the maintenance, the welfare and comfort of my said sister, and for any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my said sister, my said trustees shall have full power and right to spend and pay out of my said estate such part and parts of the principal of said trust as my trustees shall at any time deem expedient, necessary or desirable, if the income shall be deemed by them insufficient for such purposes. My trustees shall have absolute discretion in this respect and the exercise by them of such discretion shall be conclusive upon, and without right of question or objection by, any and all parties interested or to become interested in my estate. The production by my said trustees, and any successors, of receipts or vouchers for such expenditures and payments shall be a full discharge to the extent thereof, and their action in so expending *152 and paying shall be without liability on the part of said trustees, for waste or otherwise. The will further provides: SEVENTH: I order and direct that all taxes accruing to any and all Federal, State and other Governmental authorities, inheritance, estate or otherwise, upon my said estate, upon the assets thereof and upon the bequests herein made shall be paid out of any residuary estate, with the right on the part of my executors and trustees to defer the payment of any such taxes until the termination of the trust herein created for my said sister. I direct that if my residuary estate is not sufficient to pay in full the bequests herein to be paid upon the termination of the trust for my said sister, said bequests shall abate proportionately to the extent of such deficiency. Mary Zentmayer, the income beneficiary of the trust, was born on February 8, 1871, and has never married. She had had a hemorrhage in one eye several years before William's death, and he knew one was likely in the other eye. However, this was not unusual for a person of Mary's age and no operation or great medical expense was contemplated. William wanted Mary to keep on living in the same house because *153 he knew she would be able to get around more easily in a familiar place if her eyes began to fail. He also knew that she had money of her own, and, that together with the trust income he provided for by his will, she would be well cared for financially. In view of this income and her past mode of living it has been stipulated that the probability of invasion of principal is negligible. Opinion The question for decision is whether or not the trustees' power to invade the principal of the testamentary trust is limited by an ascertainable standard. If it is, then that portion of the principal which is not subject to the power is allowable as a charitable deduction from the gross estate under section 2055 of the 1954 Code. Sec. 20.2055-2(b), Income Tax Regs.; see, Merchants' National Bank v. Commissioner, 320 U.S. 256 (1943). However, the standard must be "fixed in fact and capable of being stated in definite terms of money." Ithaca Trust Co. v. United States, 279 U.S. 151 (1929). In the present case the petitioner contends that such a standard is provided by the first two sentences of article FIFTH of the will. In the first of *154 these two sentences the testator says: It is my desire and my intent that any and all parts of my estate, as well principal as income, shall be available for the support, maintenance, welfare and comfort of my said sister, so that such principal and income may be applied thereto if occasion arises as herein set forth. The respondent argues that the word "comfort" is more broadly construed under Pennsylvania law and consequently does not provide a standard in this case. In support of this argument he relies upon Price v. Rothensies, 67 F. Supp. 591 (E.D. Pa., 1946), in which the trust principal could be invaded for the "comfort and support" of the income beneficiaries. In holding that the charitable bequest could not be reliably predicted, the court there looked at the surrounding circumstances and concluded that in view of the straitened financial condition of the beneficiaries the testator could not have intended that they should be restricted to their prior mode of living. That the court did not disavow the use of "comfort" as a standard in other cases is borne out by its reliance on the leading case of Ithaca Trust Co. v. United States, supra, which *155 found an ascertainable standard when the trust principal could be invaded for any sum "that may be necessary to suitably maintain her in as much comfort as she now enjoys." The respondent also relies upon In re Rumsey's Estate, 287 Pa. 448, 135 A. 119 (1926), which said that "comfort" includes not only the necessaries of life, but "may include things which bring ease, contentment, or enjoyment." These elements are certainly not inimicable to a normal standard of living, and no case has been found which holds that the standard of invasion must be limited to the necessaries of life. We do not believe that Pennsylvania law compels a narrower interpretation of the word "comfort" than that found in other states, and if the language of the first sentence of article FIFTH stood alone it would no doubt provide an ascertainable standard. We have recently held that the phrase "for the support, maintenance, welfare and comfort" provides an ascertainable standard, because taken together in the aggregate those overlapping nouns describe the beneficiary's standard of living. Estate of Mary Cotton Wood v. Commissioner, 39 T.C. 919 (March 19, 1963). However, in this case *156 the testator did not stop there but went on in the second sentence of article FIFTH to state: In order that my said desire and intent may be carried out, I specially order and direct that for the purpose of the support, the maintenance, the welfare and comfort of my said sister, and for any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my said sister, my said trustees shall have full power and right to spend and pay out of my said estate such part and parts of the principal of said trust as my trustees shall at any time deem expedient, necessary or desirable, if the income shall be deemed by them insufficient for such purposes. Here invasion is allowed not only for the purposes named in the first sentence of article FIFTH but also "for any other purpose which my trustees shall deem expedient, necessary, or desirable." The petitioner contends that this broad wording is limited by the stated intent of the testator as set out in the first sentence of article FIFTH and is no broader in scope. Although this intent was that the principal might be invaded for Mary's "support, maintenance, welfare and comfort," the testator did *157 not restrict his intent to these purposes alone. When he provided for the power of invasion in the second sentence, he spoke in much broader terms, and the trustees' power to invade is for any expedient or desirable purpose whatsoever. Later in the same article of the will he provided that the exercise of this discretionary power to invade principal was absolute and not subject to question or objection by any interested party. The basic rule in the construction of a will is to determine the intention of the testator from the will as a whole. Estate of Malcolm Lloyd, Jr., 24 T.C. 624 (1955). In Pennsylvania, extrinsic facts and circumstances may be considered when the will is ambiguous or the intention is uncertain. In re Duld's Estate, 389 Pa. 108, 132 A. 2d 247 (1957); In re Wright's Estate, 380 Pa. 106, 110 A. 2d 198 (1955); In re Kehr's Estate, 373 Pa. 473, 95 A. 2d 647 (1953); In re Jackson's Estate, 337 Pa. 561, 12 A. 2d 338 (1940). Here the ambiguity is patent due to the apparent inconsistency of article FIFTH. After considering the record in its entirety we find that the testator did not intend to limit invasion *158 to Mary's "support, maintenance, welfare and comfort," but rather he intended that she should have the complete benefit and enjoyment of the principal as well as income, in the exercise of the trustees' absolute discretion to invade principal for any purpose they deemed expedient, necessary or desirable. The petitioner also contends that the phrase, "and for any other purpose which my trustees shall deem expedient, necessary or desirable for the benefit or use of my said sister" is limited by the words "benefit or use." We must agree with the court in Newton Trust Co. v. Commissioner, 160 F. 2d 175 (C.A. 1, 1947) affirming 5 T.C. 1304 (1945), that: "Use and benefit" considered conjunctively or disjunctively connote considerably more than the maintenance of a standard of living and to our mind payments for such a purpose or purposes could not lend themselves to predetermined measurement or a measurable standard. Since "use and benefit" do not provide a standard themselves, they certainly do not serve as a sufficient limitation in the present case. Cf. A. Strite, Exr. v. McGinnes, 215 F. Supp. 513 (E.D. Pa., 1963). In re Watson's Estate, 241 Pa. 271, 88 Atl. 433 (1913), *159 cited by the petitioner, is clearly distinguishable since it is not a tax case and does not involve the question of an ascertainable standard. Neither is a sufficient limitation found in the fact that the power of invasion must be exercised in a fiduciary capacity. Estate of Charles H. James v. Commissioner, 40 T.C. 494 (June 4, 1963). As we said there, all discretionary powers granted to testamentary trustees are exercisable in a fiduciary capacity and this does not provide an ascertainable standard by which to measure a charitable remainder interest. In Merchants' National Bank v. Commissioner, supra, the Court said that in order for the charitable deduction to be allowed it is necessary that: a highly reliable appraisal of the amount the charity will receive be available, and made at the death of the testator. Rough guesses, approximations, or even the relatively accurate valuations on which the market place might be willing to act are not sufficient. * * * Only where the conditions on which the extent of invasion of the corpus depends are fixed by reference to some readily ascertainable and reliably predictable facts do the amount which will be diverted *160 from the charity and the present value of the bequest become adequately measurable. [Citation omitted.] In State Street Bank and Trust Co., Exr. v. United States, 313 F. 2d 29 (C.A. 1, 1963), the phrase "and for any other reasonable requirement" made the standard incapable of measurement. Our recent decision in Estate of Charles H. James v. Commissioner, supra, held that invasion "for any reason whatsoever which shall to my Trustees, in their sole discretion seem sufficient" was not susceptible of any reliable prediction or certainty. We hold here that the testator's addition to the Trustees' power to invade principal "for any other purpose which my trustees shall deem expedient necessary or desirable" stretched the previously granted power to provide for the beneficiary's accustomed standard of living beyond permissible limits. As pointed out by the court in State Street Bank and Trust Co., Exr., supra, additional words presumably impart additional meaning and the addition of the words "for any other reasonable requirement," after words describing the beneficiary's accustomed standard of living authorized the trustees there "to provide something *161 more; to wit, a higher - and hence immeasurable - standard." The extent to which principal might be invaded here is unpredictable and consequently the standard was immeasurable and unascertainable when the testator died. Because of other adjustments to be made by agreement of the parties Decision will be entered under Rule 50.