## Clegg Estate

*Boyd A. England,* for petitioners.
*Daniel Sherman,* for estate.

SOKOLOVE, *J.,* September 1, 1993—

## ADJUDICATION AND DECREE NISI

The decedent died on November 15, 1991. Letters of administration were issued to Richard Costigan, Esquire on March 20, 1992.

The administrator proceeded to carry out his functions in the settlement of the estate including the filing of an account on September 30, 1992.

Sometime in the late summer of 1991, a cousin and a stepgranddaughter of the decedent discovered a document purporting to be the last will of Dorothy Clegg.

If the document in question is a valid will, it provides for gifts to certain individuals related to the decedent, who would not benefit in an intestacy. It is, therefore, their contention that the document is valid.

The matter is brought before us on a petition for certification of the record of the Register of Wills pursuant to 20 P.S. 907 and by an objection to the account filed.

The document when found was immediately turned over to the previously appointed guardian of the incompetent's estate of the decedent. He in turn gave it to the administrator who delivered it to the Register of Wills on December 9, 1992.

After receiving testimony from several witnesses on behalf of the objecting parties, we supplement the record with the following facts as we found them.

A Mary Schiavone, a legal secretary and relative of the decedent by marriage, arranged to have a will prepared for the decedent. This original will was completed in May of 1989 and was apparently executed on May 15, 1989 in the presence of witnesses. A copy of that original will was received in evidence and is identified as O-1.

The decedent became ill sometime in the summer of 1991. A cousin Isabelle Farrell and a Gloria Reiss assisted in caring for the decedent. Isabelle Farrell discovered the document in question, showed it to the decedent who indicated that it was her will. The questioned document contains only the first three pages of the will as originally drawn. (Exhibit O-2.)

The originally drafted will was prepared in the office of Emil Toften, Esquire, apparently through the intervention of his legal secretary and cousin of the decedent. All of the significant dispositive provisions are on the first page. The text in the subsequent pages sets forth provisions concerning beneficiaries under 21 years of age or who are disabled; provisions concerning the termination of trusts, other administrative directions, relating to division of principal and income, death taxes and the powers of an executor and trustee. The last page contained the appointment of an executor and trustee and the original signature of the decedent witnessed.

The document before us (O-2) consists of the first three pages of the originally drafted will. On the first page thereof, the decedent, in handwriting, marked up the initial typewritten document in the following fashion:

She indicated that a grandson had predeceased her by circling his name and writing what appears to be "deceased" next to it. In addition, she put parenthetically the name, Mary E. Miller, sister, after which she wrote "deceased." After the last typewritten line on that first page, she wrote "I never signed any other will but this one. Dorothy A. Clegg." And after that there appears further handwriting, "(My *sister* Mary Miller (for the rest of her life) that she be cared for)—Dorothy Clegg."

It is the position of the objecting parties that this document constitutes decedent's will, giving the residue of her estate to those persons designated on that page who have survived her. The administrator/accountant takes the position that the effect of the handwritten modifications, including the placement of the signature of the decedent before the typewritten matter which follows it, constitutes a revocation of the will in its original form, but is not a proper testamentary document in and of itself. Both Mary Miller and John Clegg predeceased Dorothy Clegg.

## DISCUSSION

The significant provision of the P.E.F. Code appears at 20 P.S. §2502,

"Form and execution of a will.

"Every will shall be in writing and shall be signed by the testator at the end thereof, subject to the following rules and exceptions:

"(1) Words following signature. The presence of any writing after the signature to a will, whether written before or after its execution, shall not invalidate that which precedes the signature...."

The handwritten material at the bottom of page one includes two places in which the name "Dorothy A. Clegg" was written by the decedent.

The requirement that a will be "signed by the testator at the end thereof" involves two questions. (1) Is the name at the end of a testamentary document? and (2) is it a signature? This issue is discussed at length in Bregy, *Penna. Intestate, Wills and Estates Provisions of P.E.F. Code, 1991,* Revised Edition, p. 22 et seq., section 5.a., Not Signed at the End or Not Signed at All?. The Bregy text points out that the mere handwriting

of a person's name is not necessarily intended as a signature, particularly for purposes of application to the entirety of the will.

The first question presented here is whether either of the two handwritten names is a "signature." It is clear to us that the one indicating inclusion of the sister Mary Miller as a beneficiary is not a signature applicable to the whole of the document, but applies to that modification of the will only.

However, the words written above the other written name are, "I never signed any other will but this one...." This is clearly intended to apply to all of the language which precedes it.

Having determined that there is a signature after material on page one, it is left for us to determine whether this adequately meets the requirement quoted in the case of the *Kehr Will*, 373 Pa. 473, 479, 95 A.2d 647, (1953):

"The end contemplated by the statute is the logical end of the language used by decedent in expressing his testamentary ... purpose: *Coyne Will*, 349 Pa. 331, 333, 37 A.2d 509."

Most significantly, the *Kehr* case stood for the proposition that the "end" is not necessarily the physical end of the document. On the contrary, it is the logical end of the words then expressed and intended by the testator.

In the *Kehr* case, it was a brief statement of revocation. In the case before us, it is apparent that at the time that the words were inserted by Dorothy Clegg, she had no interest in the various trust and administrative duties and other technical language which followed her signature, but was reasserting the dispositive language which preceded it.

This is within the purview of subsection (1) of section 2502 relating to the words following the signature which reads

"The presence of any writing after the signature to a will, whether written before or after its execution, shall not invalidate that which precedes the signature."[1]

It is our conclusion that the document consisting of page one alone constitutes a valid will of the decedent. It is a republication of the dispositive provisions of the will as originally typed, eliminating the boilerplate administrative language which follows.

We, therefore, enter the following:

### DECREE NISI

And now, September 1, 1993, upon consideration of the foregoing, it is hereby decreed and ordered, that the Register of Wills revoke the letters of administration granted to Richard Costigan, and admit into probate the document, consisting of the first page of the original exhibit O-2, and thereafter upon petition appoint an administrator d.b.n.c.t.a. duly qualified to administer the estate pursuant to the provisions of said will; that this decree shall become absolute within 10 days from the date hereof, unless exceptions are filed prior thereto.

---

1. It is to be noted that the exception set forth in clause (1) of section 2502 is a redraft of similar language which appeared in the Wills Act of 1917 as follows: "Section 2 ... Provided That the presence of dispositive or testamentary words or directions, or the appointment of an executor or the like, after the signature to a will, whether written or before the execution thereof, shall not invalidate that which precedes the signature." Bregy notes that the change in the language "was intended to be merely a stylistic improvement of the 1917 language." Bregy, section 2502(l) at page 34.