## Wiley, Exec., v. First Presbyterian Church of Emporium

*John D. Gresimer* of *Rydesky & Gresimer*, for plaintiff.

*Carl E. Reidy*, for defendant.

HIPPLE, P. J., February 16, 1942.—On February 27, 1941, a rule was granted upon defendant to show cause

why plaintiff should not be permitted to enter judgment upon the judgment exemption note hereinafter referred to. The petition alleged that on September 5, 1929, defendant borrowed $1,000 from George E. Wylie and, as evidence thereof, executed and delivered to him a judgment exemption note dated September 5, 1929, payable one year after date, with interest at 5½ percent per annum. The note contains a clause authorizing entry of judgment thereon in favor of the holder of the note whether the original payee, or an assignee or endorser thereof, together with the usual waivers of exemption, stay of execution, etc., and recited that it was executed by virtue of a resolution of the board of trustees of defendant, duly adopted at a regular meeting on September 4, 1929. To this rule an answer was filed substantially admitting all of the facts, but averring that payment of the obligation was refused because of the provisions of paragraph 6 of the last will and testament of Zella Wylie, deceased, hereinafter quoted; that this paragraph did not constitute a direct gift or bequest of $500 or the note to defendant, but was merely an authorization and command to her executor to cancel the obligation upon her death; that the testamentary provision was not within the legal restrictions as to bequests to religious institutions since it did not constitute a gift but was merely the cancellation of a present obligation; that the provision was not a testamentary trust, nor were any restrictions placed thereon by testatrix, and further that paragraph 6 of the will was declaratory of the verbal, expressed intention of testatrix that this obligation should be canceled, which declaration had been made more than 30 days prior to her death.

The facts are not in dispute. The obligation was originally given to George E. Wylie and payments thereon were made which reduced the principal debt to $500, interest being paid by defendant to December 1, 1938. George E. Wylie died intestate leaving as his

sole surviving heirs two sisters, Bertha Wylie and Zella Wylie, who by operation of law became the owners of the note. Bertha Wylie died November 25, 1939, leaving a last will and testament probated in Cameron County, in Register's Docket vol. "G", p. 422, by which she gave and devised her estate, real, personal, and mixed, to her sister, Zella Wylie. Zella Wylie died January 16, 1940, having executed a last will and testament dated January 11, 1940, probated and recorded in Cameron County, in Register's Docket vol. "G", p. 430. She provided therein as follows:

"I order and direct and it is my intention that my Executor, hereinafter named, shall cancel any and all obligations presently held by me against the Presbyterian Church, and shall take such steps as may be necessary to satisfy the same of record."

Letters testamentary were issued to Robert L. Wiley, and by assignment dated April 3, 1940, the administrator d. b. n. of the estate of George E. Wylie assigned to the estate of Zella Wylie all of the assets of the estate of George E. Wylie, deceased, including the obligation here in question.

Testimony in support of the averments in the answer was taken, at which time four witnesses on behalf of defendant were heard. The only testimony relating specifically to declarations by Zella Wylie as to her intention to have the present obligation canceled was that of Lista Shick, who stated that on November 24, 1939, the day before Bertha Wylie, sister of testatrix, died, Zella Wylie stated that "they had loaned money to the Presbyterian Church . . . we want the Presbyterian Church to have that money and we like Rev. McFeely very much." The other witnesses were or had been members of the board of trustees of defendant church, but none of them testified as to any agreement by testatrix or her predecessors in title to this obligation for the cancellation or waiver of payment thereof.

Plaintiff contends that, inasmuch as testatrix died

on January 16, 1940, five days after the execution of her last will and testament on January 11, 1940, the direction to the executor to cancel the obligation is in effect a bequest or gift to a body politic for religious or charitable uses, and therefore is void because her will was executed within 30 days of her death.

The Wills Act of June 7, 1917, P. L. 403, sec. 6, 20 PS §195, as last amended by the Act of May 16, 1939, P. L. 141, sec. 1, provides that no estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will at least 30 days before the decease of the testator, and all dispositions of property contrary thereto shall be void and go to the residuary legatee or devisee, heirs, or next of kin according to law.

The sole question for determination is, does a direction by a testator to his executor to cancel an obligation owing from a religious body to the testator constitute a bequest so as to render it void if 30 days do not intervene between the execution of the will and the death of the testator.

Although it was the intention of the testatrix, as expressed in her will, to cancel this obligation, so that defendant would be relieved thereof, we are forced to the conclusion that the direction by testatrix to her executor to cancel the obligations held by her against defendant comes within the terms of section 6 of the Wills Act, as amended, relating to bequests for charitable and religious uses and, since the testatrix died within five days after her will was executed, the provision with relation to cancellation of the obligation is void.

Defendant contends that this gift is not a direct gift or bequest, but is simply a direction by the testatrix to her executor to do a certain act; therefore, it becomes indirect and consequently, being indirect, no benefit is derived therefrom by defendant. The Wills Act, as last amended by the Act of 1939, does not dis-

tinguish between direct and indirect gifts, but provides: "Any gift for religious or charitable uses . . . shall be void unless made at least thirty days before such death . . ." The construction to be placed upon this particular section of the Wills Act is clearly stated in Hartman's Estate (No. 1), 320 Pa. 321, 330, as follows:

"Since the present act is a reënactment of section 11 of the Act of April 26, 1855, P. L. 328, as amended by the Act of June 7, 1911, P. L. 702, which changed the limitation of time from 'one calendar month' to 'thirty days', we have several times pointed out that the interpretation of the act by this court in the cases under the earlier act is applicable to cases arising under the Wills Act of 1917: Bingaman's Est., supra, at page 503. The construction of this statute over a period of years has been so well established that it has become a rule of property. We have uniformly held from the earliest interpretation of the statute to the present time that estates devised or bequeathed contrary to its provisions are void. The act establishes an unbending rule and fixes an arbitrary period within which such dispositions of property, whether by deed or by will, shall be absolutely barred. Such bequests, under the circumstances, fail because of the incapacity in the beneficiaries to take. The act must be literally read and construed, if effect is to be given to the legislative intent, and cannot be stretched to save a bequest clearly intended by the act to be void. Charitable or religious institutions claiming bequests or devises must bring themselves within it. As between them and the next of kin of a testator, there are no equities, and the rights of each are such only as are given by the statute. . . ."; citing numerous cases.

It thus appears that the construction of the Wills Act "has become a rule of property" and that section 6 thereof establishes an *unbending rule* and fixes an *arbitrary period* within which such dispositions of prop-

erty, whether by deed or by will, shall be absolutely barred.

To say that defendant would derive no benefit directly from the will of testatrix and particularly from the act of the executor in cancelling or satisfying of record the present obligation, is to express a hope or wish rather than a legal conclusion. There is no difference in saying to one from whom nothing is due that "I give you the sum of $500", and saying to one from whom $500 is due that "I herewith cancel your obligation of $500." In the first instance it is a pure gift; in the second instance it is a gift of a present obligation, and if the cancellation does not take place the person from whom the money is due must pay, but if the debt is canceled the debtor has benefited to the same extent as the person to whom an outright gift was made.

In Hoke v. Herman, 21 Pa. 301, the cancellation of a debt by a decedent in his last will and testament was held to be a specific legacy, and in Tourison's Estate, 22 D. & C. 93, 95, it was held: "The estate bequeathed for religious uses need not be money or tangible property. It may be the release of a debt, or . . . a limitation on the power of executors which confers a benefit on the legatee. The release of a right of cancellation is in this case a valuable thing, and the bequest of it within 30 days for religious uses is void."

In Shultz's Estate, 17 Berks 159, testatrix in her will directed that a mortgage which she held against A and B, his wife, should be satisfied by her executor and ". . . they shall be relieved from paying the amount." The court said (p. 160):

"The language employed by the testatrix in her directions concerning the mortgage indicates a two-fold purpose: first, the bequest or remission of the mortgage debt, and, second, someone who is to be the beneficiary of said debt.

"That the purpose was to release the mortgage debt and relieve the parties who owed it, is clear and beyond

question, because she directs that the 'mortgage' which she held against 'George Shultz and wife' should 'be satisfied' and they 'be relieved from paying the amount.' It is equally clear that the dispositive language, 'I direct that the mortgage which I hold against George Shultz and wife shall be satisfied,' is a bequest of the mortgage, and operates as a testamentary release of it.

"Where the language of the will gives or forgives the debt to the debtor and relieves him of his liability of the same, it will be held that such a disposition amounts to a bequest of the debt, even though the dispositive words 'I give and bequeath' are not present; Maitland v. Adair, 3 Ves. Chancery Rep. 230; Izen & Whitehurst v. Butler et al. Executors &c., 2 Price, 34; Hoke v. Herman, 21 Pa. 301. The direction to satisfy the mortgage was a relinquishment of the debt and, consequently, in effect amounted to a gift of it, and will be treated as a bequest of the debt."

The only question remaining is whether or not the above-quoted clause in the will of testatrix was merely declaratory of an expressed intention of testatrix made in her lifetime, or whether it expressed or attempted to carry out some legal duty or undertaking incurred during the life of testatrix. In the former case the mere intention to perform a certain act by will is without consideration, and therefore is not binding upon testatrix and could not be enforced at law. The mere fact that a will attempts to carry out that intention, but is made within 30 days of the death of testatrix, would not take it out of the statute; on the other hand if the previously-expressed intention of testatrix had been in the nature of an agreement or promise based upon a valid consideration or had been in the nature of a parol trust whereby testatrix in her lifetime had directed her executor to dispose of certain of her assets in accordance with her parol direction, and her will stated that her executor was to distribute in such

manner and one of those gifts had been to a charity or religious institution, the gift would take effect and would be valid, even though testatrix died within 30 days of the execution of her will, provided such oral direction had been given to her executor or the parol trust had been established more than 30 days prior to her death: Hoffner's Estate, 161 Pa. 331; Kelley's Estate, 29 Pa. Superior Ct. 106; Hartman's Estate (No. 2), 320 Pa. 331, 333, 334.

We find nothing in the testimony to show the creation of a parol trust of the present obligation by testatrix, or any oral direction to her executor to cancel the same made more than 30 days prior to her death, or any other act or thing done by her which would prevent section 6 of the Wills Act from being operative or permit her executor to satisfy or cancel the obligation, as directed in her will.

This is but another example of the risk incurred when one delays in executing a will, and of the danger that, by reason of such delay, the intentions of testator, although clearly expressed in the will, may be defeated. If testatrix had known that it was necessary for her will to be executed at least 30 days before her death, she would have executed the same prior to that period, or otherwise would have delivered the obligation to defendant for cancellation. However, her residuary legatees are still in position to carry out the direct intention of testatrix by releasing defendant from liability under this obligation, and thus the express purpose of testatrix in regard thereto will be complied with, and such action on their part would be the natural thing for them to do.

### Order

And now, February 16, 1942, the rule to show cause granted February 27, 1941, is hereby made absolute, and permission is hereby granted plaintiff to enter judgment against defendant on the obligation of de-

fendant dated September 5, 1929, such judgment to be entered for the amount of $500, with interest at the rate of 5½ percent per annum from December 1, 1938, together with an attorney's fee or commission of 10 percent, and with the waivers therein set forth.